```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ROSETTA WATSON,                    :

                 Plaintiff,        :    11 Civ. 9527 (AJN)(HBP)

    -against-                      :    REPORT AND
                                        RECOMMENDATION
TIMOTHY F. GEITHNER, SECRETARY,    :
DEPARTMENT OF THE TREASURY,
                                   :

                 Defendant.
                                   :
----------------------------------X
```

PITMAN, United States Magistrate Judge:

TO THE HONORABLE ALISON J. NATHAN, United States

District Judge,

I.   Introduction

This is an employment discrimination action in which

plaintiff alleges that she was discriminated against on the basis

of her race, age and disability.  She also alleges that she has

been the victim of illegal retaliation and subjected to disparate

treatment.  Defendant moves for an Order dismissing the complaint

pursuant to 28 U.S.C. § 1915(e)(2)(A) on the ground that plain-

tiff has falsely claimed poverty in order to be granted leave to

proceed in forma pauperis (Docket Item 16).  Defendant also moves

for an Order granting him summary judgment pursuant to

Fed.R.Civ.P. 56 on the grounds that (1) there is no evidence to establish certain of the elements of a prima facie case and (2) defendant had a non-discriminatory, non-retaliatory reason for the putatively adverse employment action.

For the reasons set forth below, I respectfully recommend that defendant's motion for summary judgment be granted on the grounds that there is no evidence to establish two elements of a prima facie case of discrimination and that plaintiff has failed to rebut the non-retaliatory reason proffered by defendant for the allegedly adverse employment action.

II.   Facts[1]

   A.   Background

Plaintiff is an African-American woman, 64 years of age, who has worked for the Internal Revenue Service ("IRS") since February, 1988 (Transcript of Deposition of Rosetta Watson, conducted on July 7 and July 14, 2011, ("Consol. Actions Dep.") at 45,[2] Transcript of Deposition of Rosetta Watson, conducted on

---

[1]Because I find it unnecessary to address defendant's contention that plaintiff misrepresented her financial status in order to be granted leave to proceed in forma pauperis, I omit all facts concerning that argument.

[2]Plaintiff's deposition in the consolidated actions, i.e., Watson II, Watson III and Watson IV, is properly considered in
                                                    (continued...)

November 30, 2012, ("Dep. Tr."), annexed as Exhibits 1 and 2, respectively, to the Declaration of AUSA Bertrand Madsen, dated January 22, 2013 (Docket Item 20)).  At the time of the events in issue, plaintiff worked as a secretary at the IRS's Wage and Investment Operating Division in Manhattan; among other things, she typed, prepared material for mailing, answered the telephone, ordered supplies and filed taxpayer forms and checks (Dep. Tr. at 6-10; Consol. Action Dep. at 51-52).

During her tenure with the IRS, plaintiff has filed approximately twenty-one complaints with the agency's Equal Employment Opportunity office and has commenced five discrimination actions against the IRS in this Court (Dep. Tr. at  16-17; Watson v. Paulson, 04 Civ. 5909 (VM)(HBP) ("Watson I"); Watson v. Geithner, 09 Civ. 6624 (HBP) ("Watson II"); Watson v. Geithner, 10 Civ. 3948 (HBP) ("Watson III"); Watson v. Geithner, 10 Civ. 7282 (HBP) ("Watson IV"); Watson v. Geither, 11 Civ. 9527 (AJN)(HBP)).  The Honorable Victor Marrero, United States Dis-

--------

[2](...continued)
connection with this motion.  Gulf USA Corp. v. Fed. Ins. Co., 259 F.3d 1049, 1056 (9th Cir. 2001); accord Dragon v. I.C. Sys., Inc., 241 F.R.D. 424, 426 n.3 (D. Conn. 2007).  I also note that because the depositions in the consolidated actions were taken in July 2011 -- approximately 10 months after the events in issue here -- plaintiff's testimony concerning the motivation for the actions against her necessarily encompassed the events in issue here.

trict Judge, granted the IRS's motion for summary judgment and dismissed the complaint in <u>Watson I</u>.  <u>Watson v. Geithner</u>, 578 F. Supp. 2d 554 (S.D.N.Y. 2008), <u>aff'd</u>, 355 F. App'x 482 (2d Cir. 2009).  <u>Watson II</u>, <u>Watson III</u> and <u>Watson IV</u> have been consolidated and are assigned to me for all purposes; a motion for summary judgment seeking the dismissal of all three actions is currently pending.

According to plaintiff, the allegedly illegal acts of discrimination and retaliation at issue in this action occurred in October, 2010 (Complaint at 3).  Although plaintiff alleges illegal discrimination, at her depositions in both the consolidated actions and in this matter, she has consistently maintained that she has been treated unfairly because her superiors have conspired with attorneys and unidentified third-party "operatives" who are out to retaliate against her as a result of her efforts to bring to light the illegal activities of the attorneys.  Specifically, plaintiff claims that the conspiracy resulted from her attempts to expose the fraudulent conduct of two attorneys, one of whom represented her in 1993 in connection with an automobile accident (<u>see</u> Consolidated Actions Dep. at 59).  According to plaintiff, after her personal injury action was concluded, the attorney who represented her in that action, Alan S. Ripka, along with another attorney named Seth R. Rotter, "used

4

[plaintiff's] name and medical records to sue Waldbaums and Wykoff Supermarkets fraudulently in a personal injury case that developed from an actual car accident that occurred while [plaintiff] was a passenger" (Consolidated Actions Dep. at 65). Plaintiff claims that Ripka "used [plaintiff's] name fraudulently to receive a million dollars off the books [and] used [plaintiff's] medical records, [her] name and sued [the] two supermarkets . . ." (Consolidated Actions Dep. at 65). Plaintiff claims that she discovered the alleged fraud in 1996 when she reviewed certain unidentified court records while serving as a juror in New York State Supreme Court, Kings County, in 1995 or 1996 (Consolidated Actions Dep. at 65-66, 70). Plaintiff further claims that she reported Ripka and Rotter's allegedly fraudulent conduct and their failure to pay taxes on their allegedly ill-gotten gain to the IRS, and the IRS retaliated against her for reporting the crime (Consolidated Actions Dep. at 73). According to plaintiff, after she reported the conduct to the IRS, suspicious vehicles started to park outside her house and unknown individuals began to follow her (Consolidated Actions Dep. at 75-77). Plaintiff believes that she continues to be followed (Consolidated Actions Dep. at 79).

Specifically, plaintiff claims that in addition to their own efforts to intimidate her, the lawyers have bribed a

5

number of IRS employees so that they will not investigate Ripka's wrongdoing and will join in the program to intimidate plaintiff (Consolidated Actions Dep. at 85-86, 90-92, 161, 364-67); she further claims that these activities have continued up to the date of the events giving rise to this action.  The conspirators allegedly paid off plaintiff's superior -- Ann Jones-Moffatte -- by buying cars for Jones-Moffatte and her daughter, giving cash to her family members and helping her son get into college -- all in an effort to persuade Jones-Moffatte to participate in the conspiracy to intimidate plaintiff (Dep. Tr. at 38-40).  Among other things, plaintiff believes the conspirators have broken into her home and stolen a washing machine, her daughter's medical records, jewelry and clothing and filled her bathtub with cement (Dep. Tr. at 41-43).  Plaintiff also believes that the conspirators have bribed Judge Marrero and myself to issue decisions adverse to her (Consolidated Actions Dep. at 111-12).

Plaintiff has repeatedly testified that the participation of her superiors in the alleged conspiracy is the sole motivating factor for the allegedly adverse actions she claims to have suffered.  For example, plaintiff testified as follows:

> Q.   And your allegation is that those attorneys attempted to use your personal information to initiate another lawsuit unrelated to you?
>
> A.   Yes.  That was Alan S. Ripka and Seth R. Rotter.

Q.    Then you reported that use of your personal infor-
      mation to the IRS?

A.    Yes.

Q.    And after that, these two attorneys started paying
      off people at the IRS, apparently paying them not
      to respond to the allegations you made?

A.    I believe that, yes.

Q.    And your theory is that in return for the payments
      they were receiving, folks at the IRS were receiv-
      ing, they started doing these bad things to you?

A.    Yes.

Q.    As you sit here today, are you aware of any other
      reasons, unrelated to these payoffs, why people at
      the IRS have taken these adverse actions against
      you?

A.    That's the only reason.  Because I was in the IRS
      prior to my being sabotaged and harassed approxi-
      mately 14 years, and I didn't have that problem.
      It all began whenever I submitted documentation to
      TIGTA -- well, they were called "Inspection" then,
      and that's when the problems began.  I was fol-
      lowed, my home was broken into on more than one
      occasion, items were stolen, items were left.

                          *     *     *

Q.    Let me ask you one more time.  When it comes to
      Ann Jones-Moffatte, is there any other reason you
      think she's taking adverse actions against you
      other than the fact that she's being paid off?

A.    I don't believe that she would have taken any
      adverse reactions against me other than she had an
      incentive, and the incentive is money, amenities,
      and she's benefitting.  And I've told her that to

her face on more than one occasion and she's never denied it.

(Consolidated Actions Dep. at 364-67 (emphasis added)).

Similarly, with respect to the specific events underlying this action, plaintiff testified:

> Q.  Ms. Watson, correct me if I'm wrong, you said that Ms. Jones-Moffatte retaliated against you by issuing this letter because of the things she was told to do to bring you down, do you remember that?
>
> A.  Or do me in, yeah.
>
> Q.  What are you referring to when you say that Ms. Jones-Moffatte was told to do certain things, and by that I mean what was she told, by whom?
>
> A.  I believe it was in 2005, she came over to me one day and she told me that Richard Rodriguez, who was at the time the area director, and that she told me that he wanted her to do me in or bring me down, but she said I would never do that because you're a good worker and I have nothing against you.  And I think it was a week later she gave me a, it was a letter of, she gave me, she reduced my rating, that's what she did.
>
> Q.  And why would Mr. Rodriguez do that?
>
> A.  I guess he's as rotten as she is.
>
> Q.  Is this part of the conspiracy that you had discussed in your other depositions?
>
> A.  Yeah, I mean, I don't know who's directing who to do what.  I just know who was carrying it out against me.
>
> *     *     *
>
> Q.  Why would all these individuals, these individuals at the IRS, do these things to you?

8

A.   Well, they apparently wanted to make sure that
     they do whatever they were told to do by whomever
     because somebody in the IRS, and I believe someone
     higher up and also the outside operatives, the
     lawyers that I mentioned, were paying people off
     and giving them amenities.  Ann Jones-Moffatte
     certainly got her share of amenities, and I didn't
     make any secret of it.

(Dep. Tr. at 36-38).


        B.  The Bases for
            the Present Action

        The discrimination and retaliation claims in the

present action arise out of two "letters of counseling" plaintiff

received on October 5 and 14, 2010.


            1.   The October 5, 2010
                 Letter of Counseling

        During October 2010, plaintiff was supervised by Ann

Jones-Moffatte who, like plaintiff, is an African-American woman,

over the age of 40 (Dep. Tr. at 14; Declaration of Ann Jones-

Moffatte, dated January 17, 2013 (Docket Item 19) ("Jones-

Moffatte Decl."), ¶¶ 1-4).  The present action is predicated

solely on the conduct of Jones-Moffatte (Dep. Tr. at 20).

        One of plaintiff's duties as of October 2010 was to

review the time sheets of other employees and input their hours

worked into the IRS's time-reporting system (Dep. Tr. at 62-63;

Jones-Moffatte Decl. ¶ 6).  Prior to September 2010, time was
entered on a biweekly basis; in September 2010, the IRS changed
procedures to require the inputting of time on a weekly basis
(Dep. Tr. at 63; Jones-Moffatte Decl. ¶¶ 8-9).  Jones-Moffatte
discussed the new weekly reporting requirement during a meeting
with employees on September 17, 2010; plaintiff contradicted her
at the meeting and told employees that time did not need to be
inputted on a weekly basis (Jones-Moffatte Decl. ¶¶ 12-15).

          Approximately two weeks later, on September 30, 2010,
plaintiff sent Jones-Moffatte an email, asserting that the weekly
reporting requirement was not working and identifying several
discrepancies she had found in the time records of other employ-
ees (Dep. Tr. at 62, 65; Jones-Moffatte Decl. ¶¶ 16-17 & Ex. 1
thereto).  In response, Jones-Moffatte spoke with the employees
identified by plaintiff and advised each to take corrective
action (Jones-Moffatte Decl. ¶ 18).  On the following day,
plaintiff emailed Jones-Moffatte again, this time requesting that
she be credited thirty minutes of time, and Jones-Moffatte met
with plaintiff in Jones-Moffatte's office to discuss the matter
(Jones-Moffatte Decl. ¶¶ 19-20).  While the two were in the
office, plaintiff addressed Jones-Moffatte in a loud voice and
claimed that Jones-Moffatte was accusing plaintiff of improperly
requesting credit for time that plaintiff had not worked (Dep.

10

Tr. at 65-68; Jones-Moffatte Decl. ¶¶ 21, 24).  Jones-Moffatte told plaintiff that she was not accusing plaintiff of falsifying her time, but that it was Jones-Moffatte's responsibility to ensure that the time records were accurate; plaintiff, however, walked out of Jones-Moffatte's office while she was speaking to plaintiff (Jones-Moffatte Decl. ¶¶ 23, 25).[3]  Later that day,

---

[3]Although, plaintiff's description of the meeting is somewhat different from Jones-Moffatte's, plaintiff makes no claim that Jones-Moffatte made any statement evidencing race-, age- or gender-based animus nor does she make any claim that Jones-Moffatte made any statements suggesting retaliatory animus (see Dep. Tr. at 65-68; Plaintiff's Motion to Deny Defendant's Request for Summary Judgment Motion for a Jury Trial Motion and Request for Permission to Submit a Cassette Tape into Evidence, dated February 25, 2013 (Docket Item 25) ("Plaintiff's Opposition") at 2-4).  Accordingly, although there may be issues of fact concerning what went on at the meeting and whether plaintiff did in fact take issue with the amended procedures for reporting time, such issues are not material to the disposition of this motion.

To the extent plaintiff seeks to submit an audio cassette in opposition to the motion for summary judgment, plaintiff does not dispute that she failed to produce that tape in discovery (Plaintiff's Motion to Deny Defendant & Assistant Attorney Bertrand Madsen Request to Deny my Request to Submit a Cassette Tape into Evidence for the Above Case in Opposition to the Defendant's Motion for Summary Judgment, dated March 10, 2013). This is reason alone to preclude reliance on the cassette. Fed.R.Civ.P. 37(c)(1).  In any event, based on plaintiff's description of the tape, it appears to bear on whether plaintiff engaged in conduct that warranted the issuance of the counseling memoranda.  However, the issue in a discrimination/retaliation case is not whether there was a good employee or bad employee.  Rather the issue is whether plaintiff suffered an adverse employment action as a result of discriminatory or retaliatory animus. Plaintiff's deposition testimony, quoted above, effectively takes
(continued...)

plaintiff sent an email to Jones-Moffatte in which she wrote,
among other things,

> Instead of saying "Thank You" for bringing the errors
> and discrepancies to your attention you were
> bel[l]igerent and downright angry.  I did not appreci-
> ate your response nor your tone of voice regarding this
> matter.  I do not come to work to be treated differ-
> ently from other employees.  You do not have to like me
> but you must respect me.  I was performing my job in
> the manner that it was suppose[d] to be performed and
> as a result the errors and discrepancies were things
> that were of legitimate concern and now have to be
> corrected and amended.  Next time try "Thank You."

(Jones-Moffatte Decl. Ex. 1).

Four days later, on October 5, 2010, Jones-Moffatte issued a counseling memorandum to plaintiff (Jones-Moffatte Decl. ¶ 27 & Ex. 2 thereto).  The memo recounted the events of the preceding three weeks and concluded:

> Your behavior towards me, your supervisor, is not
> acceptable in the workplace and will not be tolerated.
> Your behavior was in violation of 5 Code of Federal
> Regulations (CFR) Section 2635.705(a), Performance of
> Duty, which states, "You are expected to conscien-
> tiously perform your duties to the Government and the
> public, respond readily to the direction of your super-
> visors, and conduct your relations with fellow employ-
> ees in a manner which does not cause dissension or
> discord."  Please be advised that further incidents of
> discourteous conduct and failing to follow my direc-
> tion, could lead to disciplinary action up to and
> including removal from the Service.

(Jones-Moffatte Decl. Ex. 2 at 2).

---

[3](...continued)
that issue out of the case.

12

Plaintiff admitted at her deposition that after she
received the foregoing letter, she was not fired, her responsi-
bilities did not change, she was not reassigned, her benefits and
salary were not affected and she was not subjected to any disci-
plinary action (Dep. Tr. at 70-71).  According to plaintiff, the
only identifiable consequence of receiving the foregoing letter
was an increase in her blood pressure (Dep. Tr. at 70, 75),
although plaintiff offers no medical evidence suggesting causa-
tion nor does she attempt to quantify this purported effect.
Plaintiff further testified that Jones-Moffatte issued the
counseling memo because of her participation in the conspiracy to
prevent plaintiff from disclosing illegal activity and because
Jones-Moffatte is "a devil" (Dep. Tr. at 69).  At her deposition,
plaintiff also made the conclusory claim that the memo was issued
to discriminate and retaliate against plaintiff (Dep. Tr. at 70),
but she has never offered any evidence to support a finding of
discriminatory or retaliatory animus.

        2.   The October 14, 2010
             <u>Letter of Counseling</u>

One of the other tasks performed by plaintiff's unit
was to send certain forms, including Forms 795 (Daily Report of
Collection Activity) and 3210 (Document Transmittal Receipt) to

13

IRS field offices for processing (Dep. Tr. at 22-23; Jones-Moffatte Decl. ¶ 28).  In October 2010, a field office that received these forms was required to acknowledge their receipt to the unit in which plaintiff was employed (Dep. Tr. at 23; Jones-Moffatte Decl. ¶ 29).  If an acknowledgment was not received, plaintiff's unit would contact the delinquent field office to follow up (Dep. Tr. at 23-24; Jones-Moffatte Decl. ¶ 29).

Jones-Moffatte met with plaintiff and others on October 4, 2010 to discuss the foregoing matters (Dep. Tr. at 23-24; Jones-Moffatte Decl. ¶ 30).  At the meeting, Jones-Moffatte assigned plaintiff the task of following up with those field offices that did not timely acknowledge receipt of the forms (Dep. Tr. at 24-27).

The following day, plaintiff sent an email to Jones-Moffatte, claiming that another employee -- Gail Sussman -- should be assigned the task of following up with the field offices:

> Gail [S]ussman was assigned the duties of contacting the campuses to follow up on the 795/3210 that were not timely received, and I provided her with the number of days the 795s/3210s were delinquent.  I am already doing my [s]ecretarial duties and the duties of two full-time Clerks that are no longer in the office as well as the readings of the Xerox Machines on a monthly basis and acting as back-up for Debora Johnson whom [sic] is the IAR.  Both the Clerical and IAR positions are out of my Job Series not to mention my medical conditions.  Since Gail is acting as your assistant

> with the Clerical/Administrative work she should still
> continue to follow up with the 795s/3210s not acknowl-
> edged timely in order to expedite the receipt of the
> acknowledgments from the campuses.

(Jones-Moffatte Decl. ¶¶ 31-32 & Ex. 3 thereto).[4]

As a result of plaintiff's email, Jones-Moffatte met with plaintiff on October 8 and 14 to clarify plaintiff's role in following up on Forms 795 and 3210 (Jones-Moffatte Decl. ¶¶ 33-34).  In addition, Jones-Moffatte sent plaintiff a second counseling memorandum, stating, among other things:

> I want to remind you again that I have assigned the
> responsibility of following up on unacknowledged forms
> 795/3210 to you, not Gail Sussman.  I am the manager
> and I assign the work within the Group.  Failing to
> follow my instructions may result in disciplinary
> action.
>
> Your behavior as described above is in violation of 5
> Code of Federal Regulations (CFR) Section 2635.705(a),
> Performance of Duty, which states, "You are expected to
> conscientiously perform your duties to the Government
> and the public, respond readily to the direction of
> your supervisors, and conduct your relations with
> fellow employees in a manner which does not cause
> dissension or discord."

(Jones-Moffatte Decl. ¶ 35 & Ex. 4 thereto).  Again, plaintiff admitted that she suffered no adverse consequences as result of the second counseling memorandum -- her salary, benefits and job

---

[4]Notwithstanding her email to Jones-Moffatte, plaintiff testified at her deposition that she was willing to perform the follow-up duties with respect to the forms 795 and 3210 (Dep. Tr. at 26-27, 29).  Again, this dispute is not material to the resolution of this motion.

duties did not change (Dep. Tr. at 50-51).  Although plaintiff

characterized the memorandum as retaliatory, she also claimed

that she had done nothing that would warrant retaliation, and

that Jones-Moffatte issued the counseling memorandum because

"she's a rotten person" and "just to bring [plaintiff] down"

(Dep. Tr. at 34-35).  Plaintiff also claimed that Jones-Moffatte

issued the counseling memo due to her participation in the

alleged conspiracy discussed above (Dep. Tr. at 36-38).

III.  Analysis

    A.  Summary Judgment Standards

       The standards applicable to a motion for summary

judgment are well-settled and require only brief review.

> Summary judgment may be granted only where there
> is no genuine issue as to any material fact and the
> moving party . . . is entitled to a judgment as a
> matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a
> motion for summary judgment, a court must resolve all
> ambiguities and draw all factual inferences in favor of
> the nonmoving party.  Anderson v. Liberty Lobby, Inc.,
> 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202
> (1986).  To grant the motion, the court must determine
> that there is no genuine issue of material fact to be
> tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23,
> 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine
> factual issue derives from the "evidence [being] such
> that a reasonable jury could return a verdict for the
> nonmoving party."  Anderson, 477 U.S. at 248, 106 S.Ct.
> 2505.  The nonmoving party cannot defeat summary judg-
> ment by "simply show[ing] that there is some metaphysi-
> cal doubt as to the material facts," Matsushita Elec.

> Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586,
> 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual
> argument based on "conjecture or surmise," Bryant v.
> Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The Su-
> preme Court teaches that "all that is required [from a
> nonmoving party] is that sufficient evidence supporting
> the claimed factual dispute be shown to require a jury
> or judge to resolve the parties' differing versions of
> the truth at trial." First Nat'l Bank of Ariz. v.
> Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575,
> 20 L.Ed.2d 569 (1968); see also Hunt v. Cromartie, 526
> U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).
> It is a settled rule that "[c]redibility assessments,
> choices between conflicting versions of the events, and
> the weighing of evidence are matters for the jury, not
> for the court on a motion for summary judgment."
> Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006); accord Hill

v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011); Jeffreys v. City

of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Powell v. Nat'l

Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

"Material facts are those which 'might affect the

outcome of the suit under the governing law,' and a dispute is

'genuine' if 'the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'" Coppola v. Bear

Stearns & Co., Inc., 499 F.3d 144, 148 (2d Cir. 2007), quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir.

2007).  "'[I]n ruling on a motion for summary judgment, a judge

must ask himself not whether he thinks the evidence unmistakably

favors one side or the other but whether a fair-minded jury could

return a verdict for the [non-movant] on the evidence pre-

sented[.]'" Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778,

788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank,

81 F.3d 295, 298 (2d Cir. 1996).

     Summary judgment is "ordinarily inappropriate" in

employment discrimination cases where the employer's intent and

state of mind are in dispute.  Carlton v. Mystic Transp., Inc.,

202 F.3d 129, 134 (2d Cir. 2000); Cifarelli v. Vill. of Babylon,

93 F.3d 47, 54 (2d Cir. 1996); see Gallo v. Prudential Residen-

tial Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994);

Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d

Cir. 1989); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

Moreover, in discrimination cases,

> summary judgment may not be granted simply because the
> court believes that the plaintiff will be unable to
> meet his or her burden of persuasion at trial . . . .
> There must either be a lack of evidence in support of
> the plaintiff's position, . . . or the evidence must be
> so overwhelmingly tilted in one direction that any
> contrary finding would constitute clear error.

Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998)

(footnote and citations omitted).  See Risco v. McHugh, 868 F.

Supp. 2d 75, 98 (S.D.N.Y. 2012) (Ramos, D.J.).

> When deciding whether summary judgment should be
> granted in a discrimination case, we must take addi-
> tional considerations into account.  Gallo v. Pruden-
> tial Residential Services, 22 F.3d 1219, 1224 (2d Cir.
> 1994).  "A trial court must be cautious about granting

18

> summary judgment to an employer when, as here, its
> intent is at issue." Id. "[A]ffidavits and deposi-
> tions must be carefully scrutinized for circumstantial
> proof which, if believed, would show discrimination."
> Id. Summary judgment remains appropriate in discrimi-
> nation cases, as "the salutary purposes of summary
> judgment -- avoiding protracted, expensive and harass-
> ing trials -- apply no less to discrimination cases
> than to . . . other areas of litigation." Weinstock,
> 224 F.3d at 41 (internal quotation marks omitted); see
> also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d
> 456, 466 (2d Cir. 2001) ("It is now beyond cavil that
> summary judgment may be appropriate even in the
> fact-intensive context of discrimination cases.").

Desir v. City of New York, 453 F. App'x 30, 33 (2d Cir.

2011)(alterations in original).


   B.   Application of the
        Foregoing Principles


     Claims of discrimination on the basis of race, age and

disability are properly analyzed under the now familiar framework

first set forth in McDonnell Douglas Corp. v. Green, 411 U.S.

792, 802 (1973). E.g., Men of Color Helping All Soc., Inc. v.

City of Buffalo, Docket No. No. 12-3067-CV, 2013 WL 3285208 at *3

(2d Cir. July 1, 2013) (race discrimination); Ben-Levy v.

Bloomberg, L.P., Docket No. No. 12-2795-cv, 2013 WL 1810953 at *1

(2d Cir. May 1, 2013) (age and disability discrimination);

McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013)

(disability discrimination); Rubinow v. Boehringer Ingelheim

Pharm., Inc., 496 F. App'x 117, 118 (2d Cir. 2012) (age discrimination).

Under the McDonnell Douglas framework, plaintiff's claims are assessed through a three-part, burden-shifting analysis:

> [T]he initial burden rests with the plaintiff to establish a prima facie case of discrimination. "A plaintiff's establishment of a prima facie case gives rise to a presumption of unlawful discrimination" that then "shifts the burden of production to the defendant, who must proffer a 'legitimate, nondiscriminatory reason' for the challenged employment action." Woodman v. WWOR-TV, Inc., 411 F.3d [69, 76 (2d Cir. 2005)] (quoting Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001)). If the defendant satisfies this burden, "the presumption of discrimination drops out" of the case, and the plaintiff must prove that a defendant's proffered reasons were not the true reasons for its actions but a pretext for discrimination. Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001).

Cross v. New York City Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005).

In order to meet her burden with respect to a prima facie case of discrimination, plaintiff must offer evidence sufficient to give rise to an issue of fact as to four elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in a protected class. Dawson v. Bumble &

Bumble, 398 F.3d 211, 216 (2d Cir. 2005); Collins v. N.Y.C.
Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); Norville v.
Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999);
Brennan v. Metro. Opera Ass'n Inc., 192 F.3d 310, 316 (2d Cir.
1999); Hills v. City of New York, 03 Civ. 4265 (WHP), 2005 WL
591130 at *3 (S.D.N.Y. Mar. 15, 2005) (Pauley, D.J.); Beckmann v.
Darden, 351 F. Supp. 2d 139, 146 (S.D.N.Y. 2004) (Robinson,
D.J.); Williams v. Salvation Army, 108 F. Supp. 2d 303, 308
(S.D.N.Y. 2000) (Berman, D.J.), citing Texas Dep't of Cmty.
Affairs v. Burdine, 450 U.S. 248, 254 (1981).

　　　　A retaliation claim is subject to the same burden-
shifting analysis except that the elements of a prima facie case
are slightly different.  Kaytor v. Electric Boat Corp., 609 F.3d
537, 552 (2d Cir. 2010); Jute v. Hamilton Sundstrand Corp., 420
F.3d 166, 173 (2d Cir. 2005).  To establish a prima facie case of
retaliation, a plaintiff must demonstrate that: (1) she engaged
in protected activity; (2) the employer was aware of this activi-
ty; (3) the employer took adverse action against her and (4) a
causal connection exists between the protected activity and the
adverse action, i.e., that a retaliatory motive played a part in
the adverse employment action.  Obinabo V. Radioshack Corp.,
Docket No. 12-2476, 2013 WL 2450544 at *1 (2d Cir. June 7, 2013);
Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685,

21

698 (2d Cir. 2012); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161,
177 (2d Cir. 2006); Constance v. Pepsi Bottling Co. of N.Y., 03-
CV-5009 (CBA)(MDG), 2007 WL 2460688 at *34 (E.D.N.Y. Aug. 24,
2007).  "The term 'protected activity' refers to action taken to
protest or oppose statutorily prohibited discrimination." Cruz
v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000); see also
Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59
(2006) ("Title VII's antiretaliation provision forbids employer
actions that 'discriminate against' an employee (or job appli-
cant) because he has 'opposed' a practice that Title VII forbids
or has 'made a charge, testified, assisted, or participated in' a
Title VII 'investigation, proceeding, or hearing.'" (quoting 42
U.S.C. § 2000e-3(a))).

## 1.  Plaintiff's Discrimination Claim

Defendant does not take issue with plaintiff's ability
to meet the first two requirements of a prima facie case of
discrimination.  See Gregory v. Daly, 243 F.3d 687, 696 (2d Cir.
2001) ("To show 'qualification' . . . the plaintiff need not show
perfect performance or even average performance.  Instead, [she]
need only make the minimal showing that [she] possesses the basic
skills necessary for performance of the job." (inner quotations
and citations omitted; emphasis in original)).  Defendant does,

22

however, contend that there is no evidence that plaintiff suf-
fered an adverse employment action or that the purportedly
adverse employment actions occurred under circumstances that give
rise to an inference of discrimination.

        a.   Adverse
            Employment Action

      An adverse employment action requires a materially
adverse change in the terms and conditions of employment.

> A plaintiff sustains an adverse employment action
> if he or she endures a "materially adverse change" in
> the terms and conditions of employment.  See Richardson
> v. New York State Dep't of Correctional Serv., 180 F.3d
> 426, 446 (2d Cir. 1999) (relying on Crady v. Liberty
> Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir.
> 1993)).  To be "materially adverse" a change in working
> conditions must be "more disruptive than a mere incon-
> venience or an alteration of job responsibilities."
> Crady, 993 F.2d at 136.  "A materially adverse change
> might be indicated by a termination of employment, a
> demotion evidenced by a decrease in wage or salary, a
> less distinguished title, a material loss of benefits,
> significantly diminished material responsibilities, or
> other indices . . . unique to a particular situation."
> Id.; see Wanamaker v. Columbian Rope Co., 108 F.3d 462,
> 466 (2d Cir. 1997) (ADEA protects the employee against
> "less flagrant reprisals" than termination or a reduc-
> tion in wages and benefits).

Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.
2000) (footnote omitted); accord Sanders v. New York City Human
Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004); Terry v. Ashcroft,
336 F.3d 128, 138, 141 (2d Cir. 2003).

The only putatively adverse employment actions cited by plaintiff are the two counseling memos issued by Jones-Moffatte. The cases in this Circuit uniformly hold that the issuance of such memoranda, unaccompanied by demotion, diminution of responsibilities or the like, does not constitute an adverse employment action for purposes of a discrimination claim.  Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 570 (2d Cir. 2011) ("[E]ven assuming the counseling rose to the level of some form of criticism, we have held, in the context of the issuance of a 'counseling memo,' that criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action." (inner quotations omitted)); Cody v. Cnty. of Nassau, 345 F. App'x 717, 719 (2d Cir. 2009) (counseling notices not adverse employment actions); Williams v. New York City Housing Auth., 335 F. App'x 108, 110 (2d Cir. 2009) (issuance of two counseling memoranda not adverse employment action); Phillips v. Bowen, 278 F.3d 103, 117 (2d Cir. 2002) (employee counseling session not adverse employment action); Weeks v. New York State Div. of Parole, 273 F.3d 76, 86 (2d Cir. 2001) (a notice inform-ing an employee of incompetence and a "counseling memo" concern-ing the employee's conduct, in the absence of any allegation of negative effects on plaintiff's job conditions could not consti-

24

tute an adverse employment action), abrogated on other grounds,
Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108-14
(2002); Hussey v. New York State Dept. of Law/Office of Atty.
Gen., 11-CV-0206 (RRM)(RLM), 2013 WL 1170719 at *9 (E.D.N.Y. Mar.
20, 2013) ("As a matter of law, a counseling memo does not
constitute a materially adverse employment action unless it is
accompanied by other adverse changes in employment."); Durant v.
New York City Housing Auth., 12-CV-937 (NGG)(JMA), 2013 WL
1232501 at *6 (E.D.N.Y. Mar. 4, 2013) (Report & Recommendation)
("[T]he November 1, 2011 counseling memorandum that plaintiff
received is not, by itself, an adverse action."), adopted at,
2013 WL 1247516 (E.D.N.Y. Mar 26, 2013); Lyman v. NYS OASAS,
1:12-CV-530 (MAD/RFT), 2013 WL 705119 at *7 (N.D.N.Y. Feb. 26,
2013) ("[T]he issuance of a 'counseling memorandum' and a 'notice
of discipline,' without any further evidence regarding a materi-
ally adverse effect thereof, is not an adverse employment action
as a matter of law."); Risco v. McHugh, 868 F. Supp. 2d 75, 113
(S.D.N.Y. 2012) (Ramos, D.J.) ("The preparation of two counseling
memoranda . . . is insufficient to establish a materially adverse
action as a matter of law."); Sotomayor v. City of New York, 862
F. Supp. 2d 226, 254 (E.D.N.Y. 2012) (Weinstein, D.J.) ("Criti-
cism of an employee in the course of evaluating and correcting

her work is not an adverse employment action."); <u>Sheridan v. New York Life</u>

<u>Inv. Management, LLC</u>, 09 Civ. 4746 (KBF), 2012 WL 474035 at *6 (S.D.N.Y. Feb. 9, 2012) (Forrest, D.J.) ("[A]s a matter of fact and law, the [Memorandum of Understanding placed in plaintiff's file setting forth performance deficiencies] cannot itself be an adverse employment action.").

      Plaintiff offers no evidence that even remotely sug-gests she suffered any adverse actions beyond the receipt of the memos themselves, and she freely admitted at her deposition that there was no change in her duties or compensation after the receipt of either counseling memo (Dep. Tr. at 50-51, 70-71).[5] Thus, the authorities cited in the preceding paragraph mandate the conclusion that an essential element of plaintiff's <u>prima facie</u> case of discrimination -- an adverse employment action -- is lacking.

---

    [5]To the extent plaintiff makes the conclusory assertion that her hypertension was exacerbated as a result of the memos, her subjective conclusion, unaided by any medical evidence of causation, is inadmissible.  In any event, plaintiff's hypertension, whatever its cause, is not a change in the conditions of employment.

b.  An Adverse Employment
Action Occurring Under
Circumstances that Give Rise
to an Inference of Discrimination

Even if I assume that the issuance of counseling memo-
randa constitutes an adverse employment action, there is no
evidence that they were issued under circumstances giving rise to
an inference of discrimination.

Although there can be no doubt that workplace discrimi-
nation is often subtle and that individuals who engage in dis-
crimination rarely expressly state their illegal motivation, a
plaintiff alleging illegal discrimination must offer more than a
subjective belief that she has been the victim of illegal dis-
crimination.  A plaintiff's "belief, based on no evidence other
than gut instinct that [her supervisor] treated her with hostil-
ity because of her race, cannot justifiably support an inference
of discrimination when nothing in the record remotely links [the
supervisor's] treatment of [plaintiff] to her race." Taylor v.
Polygram Records, 94 Civ. 7689 (CSH), 1999 WL 124456 at *16
(S.D.N.Y. Mar. 8, 1999) (Haight, D.J.) (emphasis in original);
accord Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991)
(summary judgment motion cannot be defeated "on the basis of
conjecture or surmise"); Lioi v. New York City Dep't of Health &
Mental Hygiene, 914 F. Supp. 2d 567, 583 (S.D.N.Y. 2012)

27

(Engelmayer, D.J.) ("[A] plaintiff cannot establish a prima facie case based on 'purely conclusory allegations of discrimination, absent any concrete particulars.'" (internal citations omitted)); Shabat v. Blue Cross Blue Shield, 925 F. Supp. 977, 988 (W.D.N.Y. 1996) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate non-discriminatory reason." (internal citations omitted)).

Plaintiff has offered no admissible evidence suggesting that the putatively adverse employment actions occurred under circumstances that would support an inference of discrimination. First, plaintiff affirmatively testified that Jones-Moffatte issued the counseling memoranda as a result of her participation in the conspiracy to intimidate plaintiff (Dep. Tr. at 36-41, 45, 70). Second, plaintiff testified that Jones-Moffatte issued the memoranda because "she's a rotten person" and "she's "a devil" (Dep. Tr. at 34, 69). Third, to the extent plaintiff testified that Jones-Moffatte issued the memoranda for discriminatory reasons (Dep. Tr. at 46, 48, 50), her testimony was entirely conclusory and unsupported by any evidence of facts that could support an inference of discrimination.

28

The only arguably admissible evidence in the record
that might support an inference of discrimination is plaintiff's
testimony that she was treated less favorably than certain other
individuals (Dep. Tr. at 53-58).

> "A showing of disparate treatment -- that is, a showing
> that an employer treated plaintiff 'less favorably than
> a similarly situated employee outside his protected
> group' -- is a recognized method of raising an infer-
> ence of discrimination for the purposes of making out a
> prima facie case." Mandell v. County of Suffolk, 316
> F.3d 368, 379 (2d Cir. 2003).  An employee is similarly
> situated to co-employees if they were (1) "subject to
> the same performance evaluation and discipline stan-
> dards" and (2) "engaged in comparable conduct." Graham
> v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000).
> "[T]he standard for comparing conduct requires a rea-
> sonably close resemblance of the facts and circum-
> stances of plaintiff's and comparator's cases, rather
> than a showing that both cases are identical." Id.  In
> other words, the comparator must be similarly situated
> to the plaintiff "in all material respects." Shumway
> v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir.
> 1997).

Ruiz v. Cnty. of Rockland, 609 F.3d 486, 493-94 (2d Cir. 2010);

accord Zuk v. Onondaga Cnty., 471 F. App'x 70, 71 (2d Cir. 2012).

The plaintiff bears the burden of demonstrating that a putative

comparator is similarly situated in all material respects.

Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) ("When

considering whether a plaintiff has raised an inference of dis-

crimination by showing that she was subjected to disparate treat-

ment, we have said that the plaintiff must show she was similarly

situated in all material respects to the individuals with whom

she seeks to compare herself.") (internal quotations omitted);
accord Bennett v. Verizon Wireless, 04-CV-6314 (CJS), 2008 WL
216073 at *2 (W.D.N.Y. Jan. 24, 2008); White v. Home Depot Inc.,
04-CV-401, 2008 WL 189865 at *6 (E.D.N.Y. Jan. 17, 2008);
Augustin v. Yale Club, 03 Civ. 1924 (KMK), 2006 WL 2690289 at *25
(S.D.N.Y. Sept. 15, 2006) (Karas, D.J.); Conway v. Microsoft
Corp., 414 F. Supp. 2d 450, 459 (S.D.N.Y. 2006) (Holwell, D.J.).
Whether employees are similarly situated is ordinarily a question
of fact; however, "if there are many distinguishing factors
between plaintiff and the comparators, the court may conclude as
a matter of law that they are not similarly situated." Nurse v.
Lutheran Med. Ctr., 854 F. Supp. 2d 300, 312 (E.D.N.Y. 2012),
citing McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001)
and Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.
2 (2d Cir. 2001).

        Plaintiff testified concerning four putative compara-
tors:  Gail Sussman, Charise Hart, Margaret Cummings-McEacheron,
and Patrice Howard (Dep. Tr. at 53, 55, 57, 59).  All of the
putative comparators, however, had pay grades higher than plain-
tiff's (Dep. Tr. at 53-59) and none had engaged in conduct simi-
lar to the conduct cited by Jones-Moffatte in the counseling
memoranda, i.e., disobeying the directions of a supervisor.
Given these differences, especially the latter, these four indi-

viduals are not similarly situated to plaintiff, and, thus, even if they were treated differently than plaintiff, such differences cannot provide a basis for an inference of discrimination.

c.   Summary

Accordingly, plaintiff has failed to offer any evidence that would support a finding as to two of the essential elements of a prima facie case, namely, an adverse employment action and facts giving rise to an inference of discrimination.  Defendant is, therefore entitled to summary judgment with respect to plaintiff's discrimination claims.

2.   Retaliation Claim

Assuming for purposes of argument that plaintiff can discharge her burden of establishing a prima facie case of retaliation, defendant is also entitled to summary judgment on this claim because plaintiff has not discharged her burden of offering evidence sufficient to support a finding that the non-retaliatory reason proffered by defendant is really a pretext for retaliation.[6]

---

[6]Although the record appears to establish other potential bases for granting defendant summary judgment on plaintiff's retaliation claim, defendant does not rely on these other grounds
(continued...)

Defendant states that the counseling memoranda were issued to plaintiff as a result of her inappropriate behavior with respect her supervisor's instructions to her (Jones-Moffatte Decl. ¶¶ 14, 21-22, 24-27, 31-32, 34, 35, 37 & Exs. 1-4 thereto). Plaintiff not only offers nothing in response to this contention, but she also affirmatively stated at her deposition that the counseling memoranda were issued in retaliation for her efforts

---

[6](...continued)
for summary judgment.  For example, plaintiff claimed at her deposition that the basis for Jones-Moffatte's allegedly retaliatory conduct was her participation in the alleged conspiracy to intimidate plaintiff (Dep. Tr. at 35-37); plaintiff never even suggested that she was the victim of retaliation based on her participation in protected activity.  In his memorandum of law, however, defendant does not assert the lack of a connection between protected activity and the allegedly adverse employment action as a basis for granting summary judgment.  In light of plaintiff's pro se status, it would be inappropriate to grant summary judgment on the basis of theories the movant never asserted.

I also note that although defendant argues that he is entitled to summary judgment dismissing the retaliation claim because plaintiff has not suffered an adverse employment action, defendant does not address the Supreme Court's holding that an adverse employment action for purposes of a retaliation claim is a broader concept than for purposes of a direct discrimination claim.  See Burlington Northern & Santa Fe Ry. v. White, supra, 548 U.S. at 57; Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (for purposes of a retaliation claim, "[a]ctions are 'materially adverse' if they are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" (internal citation omitted)).  Because defendant does not cite any post-Burlington authority holding, as a matter of law, that a counseling memorandum is not an adverse employment action for purposes of a retaliation claim, I decline to recommend summary judgment on this ground.

to disclose the allegedly illegal activity of attorneys Ripka and
Rotter (Dep. Tr. at 34-37), not in retaliation for her partici-
pating in any protected activity.[7]  Even if I assume that there is
sufficient temporal proximity between plaintiff's EEO complaints
and civil actions and the issuance of the counseling memoranda to
support an inference of retaliation at the prima facie stage,[8]
temporal proximity alone is insufficient to show that a non-
retaliatory reason for the adverse employment action is a pretext
for illegal retaliation.  El Sayed v. Hilton Hotels Corp., 627

---

[7]In her opposition papers, plaintiff makes the conclusory
statement her employer did retaliate against her for EEO
complaints and her discrimination actions (Plaintiffs Opposition
at 1, 4).  In addition to be entirely conculsory, these
statements contradict plaintiff's sworn deposition testimony.
They are, therefore, insufficient to create a genuine issue of
fact.  In re Fosamax Products Liability Litig., 707 F.3d 189,
193-94 (2d Cir. 2013) (The "sham issue of fact" doctrine
"prohibits a party from defeating summary judgment simply by
submitting an affidavit that contradicts the party's previous
sworn testimony."); Mack v. United States, 814 F.2d 120, 124 (2d
Cir. 1987) ("It is well settled in this circuit that a party's
affidavit which contradicts his own prior deposition testimony
should be disregarded on a motion for summary judgment.").


[8]Although plaintiff did not identify it as a cause for the
allegedly retaliatory conduct, I note that the complaint in
Watson IV was filed on September 22, 2010, two to three weeks
before the allegedly retaliatory counseling memoranda.  This
degree of temporal proximity is sufficient to sustain an
inference of retaliatory animus at the first step of the
McDonnell Douglas analysis.  See Nagle v. Marron, 663 F.3d 100,
110-11 (2d Cir. 2011) (six-week span between protected activity
and adverse action sufficient to sustain inference of causation
at the prima facie stage).

F.3d 931, 933 (2d Cir. 2010) (per curiam) ("The temporal proxim-
ity of events may give rise to an inference of retaliation for
the purposes of establishing a prima facie case of retaliation
under Title VII, but without more, such temporal proximity is
insufficient to satisfy appellant's burden to bring forward some
evidence of pretext. . . . Indeed, a plaintiff must come forward
with some evidence of pretext in order to raise a triable issue
of fact."), citing Quinn v. Green Tree Credit Corp., 159 F.3d
759, 770 (2d Cir. 1998); Dixon v. Int'l Fed'n of Accountants, 416
F. App'x 107, 110-11 (2d Cir. 2011).  The absence of evidence of
retaliatory animus other than temporal proximity in conjunction
with plaintiff's admission that protected activity was not a
reason for the allegedly retaliatory acts is fatal to plaintiff's
retaliation claim.

Summary judgment should, therefore, also be granted
with respect to plaintiff's retaliation claim.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-
fully recommend that summary judgment be granted dismissing the
complaint in its entirety.

V.   OBJECTIONS

          Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Alison J. Nathan, United States District Judge, 40 Centre Street, Room 2102, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Nathan.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

35

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        August 8, 2013

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Ms. Rosetta Watson
358 Fourth Street
Brooklyn, New York  11215

Sarah S. Normand, Esq.
Assistant United States Attorney
Southern District of New York
86 Chambers Street
New York, New York  10007